UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER HANFORD,

    Plaintiff,

v.

J.C. PENNEY CORPORATION, INC.,
and DIVERSIFIED MAINTENANCE
SYSTEMS, INC.,

    Defendants.
_____/

Case No. 18-11363

Hon. George Caram Steeh

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 24, 27)

Before the court are Defendants' motions for summary judgment. The court heard oral argument on October 28, 2019, and took the matter under advisement. For the reasons explained below, Defendants' motions are denied.

### BACKGROUND FACTS

Plaintiff Jennifer Hanford slipped and fell at a J.C. Penney store in Ann Arbor, Michigan. Hanford worked for U.S. Vision, an optical store located within J.C. Penney. J.C. Penney contracts with Defendant Diversified Maintenance Systems ("Diversified") for janitorial services.

On February 9, 2015, sometime between 11 a.m. and 12 p.m., Hanford was walking with Nicole Fitzgerald to the breakroom, in an employee-only area of the store. As Hanford walked down the hall to the breakroom, she did not observe water on the floor, a wet floor sign, or any cleaning supplies. She purchased a candy bar in the breakroom and then began walking down the same hallway in the opposite direction. Hanford slipped and fell forward, landing on her wrist and stomach. She then rolled over and sat on the floor. She did not see any water on the floor, but noticed "moisture" on the sole of her shoe and that her rear end was wet. Neither her hands nor the front of her clothing were wet. Hanford injured her ankle and broke her wrist as a result of her fall.

In her declaration, Nicole Fitzgerald stated that when Hanford fell, the "floor was definitely damp like it had just been mopped." ECF No. 29-5. She also stated that, later that day, "I recall talking to an older African-American male who was one of the custodians. He was an elderly man and had curly black hair. He asked if Jennifer was okay. He said he hoped she didn't fall because he was cleaning and hoped she was okay." *Id.*

Approximately one week after Hanford's fall, her boyfriend, Mark O'Bryan, was waiting for Hanford to get off work. He ran into Darryl Richardson, a Diversified employee, in the restroom. According to

O'Bryan, Richardson said that he was "sorry about Jennifer, I forgot to leave the wet floor sign out, I just mopped the floors basically in them areas." ECF No. 29, Ex. 2 at 24. O'Bryan, who had also worked for Diversified, testified that Richardson often slept on the job, then clocked out and finished his tasks.

Plaintiff's complaint alleges claims of negligence and premises liability against J.C. Penney and Diversified. Defendants seek summary judgment in their favor.

## LAW AND ANALYSIS

### I. Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the opposing party must come forward with specific evidence showing there is a genuine issue of fact for trial. A "mere scintilla" of evidence is insufficient to meet this burden; the evidence must be such that a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252.

II. Negligence/Premises Liability

Michigan law governs Plaintiff's negligence/premises liability claims in this diversity case. *See Chandler v. Specialty Tires of Am. (Tenn.) Inc.*, 283 F.3d 818, 823 (6th Cir. 2002). To establish a prima facie case of negligence, a plaintiff must establish that (1) the defendant owed the plaintiff a duty; (2) defendant breached its duty; (3) causation; and (4) damages. *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000). The common law "imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 95 (1992) (citation omitted).

With respect to premises liability, "[i]t is well settled in Michigan that a premises owner must maintain his property in a reasonably safe condition and has a duty to exercise due care to protect invitees from conditions that

-4-

might result in injury." *Id.* at 90. *See also Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596-97 (2000). As an employee working within its store, Hanford was an invitee of J.C. Penney. *See id.* ("[I]nvitee status is commonly afforded to persons entering upon the property of another for business purposes.").

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger.

*Stitt*, 462 Mich. at 597.

### III. Diversified Maintenance's Motion

Diversified first argues that, under its contract with J.C. Penney, it had no duty to Plaintiff. *See Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 467 (2004) (holding that a defendant must owe a duty to the plaintiff that is "separate and distinct from the defendant's contractual obligations"). Diversified's argument is misplaced. Plaintiff's cause of action is not based upon Diversified's failure to perform its contractual obligations to J.C. Penney. Rather, Plaintiff "claims that defendant breached the common-law duty to exercise reasonable care and avoid harm when one acts." *Loweke*

*v. Ann Arbor Ceiling & Partition Co., L.L.C.*, 489 Mich. 157, 168-71 (2011). By performing an act under a contract, Defendant "was not relieved of its preexisting common-law duty to use ordinary care in order to avoid physical harm to foreseeable persons and property in the execution of its undertakings." *Id.*; *see also Leone v. BMI Refractory Servs., Inc.*, 893 F.3d 359, 363 (6th Cir. 2018) (when a party acts it has a duty "to perform the act in a nonnegligent manner").

Diversified also argues that no hazardous condition existed, and that even if one did, Diversified did not create the hazardous condition. Diversified bases this argument on the fact that Hanford did not observe the floor to be wet or recently mopped, and that Darryl Richardson was allegedly not working or in the building at the time of her fall. Plaintiff's theory is that Richardson mopped the floor and failed to put out a wet floor sign. Plaintiff points to Fitzgerald's testimony that the floor appeared damp, as well as Richardson's alleged admission to both Fitzgerald and O'Bryan that he had mopped before Plaintiff fell. Although Diversified contends that Richardson clocked out at 9:41 a.m. on the day Hanford fell (between 11 a.m. and 12 p.m.), O'Bryan testified that Richardson often slept during working hours and then worked off the clock to finish his tasks. Viewing the evidence in the light most favorable to Plaintiff, there is a question of fact

regarding whether Diversified breached its duty by creating a hazardous condition that led to Plaintiff's fall. *See Berryman v. K Mart Corp.*, 193 Mich. App. 88, 91-93 (1992) (question fact when "the evidence leads to an inference that defendant created the condition" that caused the plaintiff's fall).

Diversified also argues that it did not have notice of any hazardous condition. However, "[b]ecause the evidence leads to an inference that defendant created the condition that caused [the plaintiff's] fall, proof of notice is unnecessary." *Id.* at 93.

Finally, in its reply brief, Diversified asserts that it cannot be held liable for work that Richardson allegedly performed off the clock. Diversified argues that such work was outside the scope of Richardson's employment. *See generally Rogers v. J.B. Hunt Transport, Inc.*, 466 Mich. 645, 651 (2002) ("An employer is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employer's control."). However, the fact that Richardson performed work on behalf of his employer off the clock does not necessarily remove that work from the scope of his employment. *See Matouk v. Michigan Municipal League Liability & Property Pool*, 320 Mich. App. 402 (2017). An employee acts within the

scope of his employment when he is "engaged in the service of his master or while about his master's business." *Hamed v. Wayne Cty.*, 490 Mich. 1, 11 (2011). An employee's conduct is within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." *Matouk*, 320 Mich. App. at 413 (quoting Restatement of Agency (Second) § 228)). "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* at 414.

Thus, the analysis is more complicated than Defendant suggests. The parties have not fully briefed this issue. Moreover, "the issue of whether the employee was acting within the scope of his employment is generally for the trier of fact." *Id.* at 408-409. The court may only decide the issue as a matter of law if "it is clear that the employee was acting to accomplish some purpose of his own." *Id.* In this case, there is no evidence that Richardson "was acting to accomplish some purpose of his own" by mopping the floor, even if he did so after his designated work hours.

For these reasons, the court will deny Diversified's motion for summary judgment.

IV. J.C. Penney's Motion

J.C. Penney argues that it is not liable because it had no notice of any unsafe condition. *See Stitt,* 462 Mich. at 597. As discussed above, however, Plaintiff has raised a question of fact regarding whether Diversified created an unsafe condition by failing to put up a wet floor sign after mopping. The issue is not whether J.C. Penney had notice of the unsafe condition (and was negligent itself), but whether J.C. Penney is vicariously liable for Diversified's negligence. When a property owner "entrusts repairs to an independent contractor, the general weight of authority is that his duty of care in making them cannot be delegated, and he will be liable for the contractor's negligence." *Misiulis v. Milbrand Maintenance Corp.*, 52 Mich. App. 494, 502, 508 (1974) (holding that defendant premises owners were "vicariously liable for the negligence of their independent contractor in making repairs on the leased premises which resulted in injury to plaintiff, a business invitee"). *See also Richter v. American Aggregates Corp.*, 522 Fed. Appx. 253, 260-61 (6th Cir. 2013) (noting that a landlord's duty to exercise reasonable care in making repairs is "nondelegable").

J.C. Penney does not respond to Plaintiff's argument that it is vicariously liable for Diversified's negligence. Accordingly, it has not met its burden of demonstrating that it is entitled to summary judgment.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' motions for summary judgment (ECF Nos. 24, 27) are DENIED.

Dated: November 4, 2019

                        s/George Caram Steeh
                        GEORGE CARAM STEEH
                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 4, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk